IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WRS, INC., d/b/a WRS MOTION PICTURE LABORATORIES, a corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>PLAZA ENTERTAINMENT, INC., a corporation, ERIC PARKINSON, CHARLES von BERNUTH and JOHN HERKLOTZ,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 00-2041<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM

I

Pursuant to Rule 56 of the Federal Rules of Civil Procedure,
plaintiff, WRS, Inc. ("WRS"), and defendant John Herklotz
("Herklotz") have filed cross-motions for summary judgment with
respect to the issue of Herklotz's liability to WRS for the debt
of defendant Plaza Entertainment, Inc. ("Plaza Entertainment")
under a surety agreement executed by Herklotz on May 6, 1998.  In
addition, Herklotz moves for summary judgment with respect to the
issue of WRS's alleged damages.

For the reasons set forth below, (1) WRS's motion for
summary judgment on the issue of liability will be granted, (2)
Herklotz's cross-motion for summary judgment, or, alternatively,
partial summary judgment, on the issue of liability will be

1

denied, and (3) Herklotz's motion for summary judgment on the
issue of damages will be denied.

II

For purposes of the present motions, the following facts are
undisputed:

Plaza Entertainment was formed in 1996 to engage in the
commercial exploitation of film and video titles through
licenses, assignments or other transfers of rights by the
producers or other owners of the copyrights in the film and video
titles.   (Doc. 1, pp. 3-4, ¶ 9, Doc. 7, p. 2, ¶ 9).   Defendant
Eric Parkinson ("Parkinson"), defendant Charles von Bernuth ("von
Bernuth") and Herklotz were shareholders, owners and/or
principals of Plaza Entertainment.[1]   (Doc. 7, p. 8, Count III of
Crossclaims, ¶ 1).

At all relevant times, WRS was engaged in the business of
film and video duplication and fulfillment services, as well as
the administration of funds generated by distribution of the
duplicated films and videos, for film and video distributors.[2]

---

[1]According to Herklotz, he was the Chairman of the Board of
Plaza Entertainment from approximately September, 1997 to April,
1998.   (Doc. 7, p. 2, ¶ 8).

[2]WRS was located in Pittsburgh, Pennsylvania.   According to
a Pittsburgh Post-Gazette article attached to Herklotz's motion
for summary judgment, after 49 years in business, WRS suddenly
closed its doors in August, 2001, due to a slow economy and heavy
debt, which resulted in the foreclosure of a $4.4 million loan by
the National Bank of Canada.   (Doc. 81, Exh. D).

2

(Doc. 1, p. 3, ¶ 3, Doc. 7, p. 1, ¶ 3).  WRS and Plaza

Entertainment began a business relationship in 1996.  By April,

1998, WRS had performed a significant amount of duplication and

fulfillment services for Plaza Entertainment for which it had not

been fully paid.   (Doc. 81, p. 3, ¶¶ 8-9, Doc. 83, p. 2, ¶¶ 8-9).

On April 29, 1998, Plaza Entertainment submitted an order to

WRS for duplication of a video entitled "The Giant of Thunder

Mountain," requesting the duplication services on a credit basis.

WRS allegedly was unwilling to extend additional credit to Plaza

Entertainment unless Plaza Entertainment paid its past due

balance or updated its credit application, provided additional

collateral as security and provided a guaranty from Herklotz.

(Doc. 81, p. 4, ¶¶ 10-11, Doc. 83, p. 2, ¶¶ 10-11).

On May 5, 1998, Parkinson or von Bernuth, or both, told

Herklotz that Wal-Mart had placed an order with Plaza

Entertainment for a large number of The Giant of Thunder Mountain

videos, and that WRS required his execution of a guaranty to

duplicate The Giant of Thunder Mountain videos.   (Doc. 7, p. 10,

Count V of Crossclaims, ¶ 2, Doc. 83, ¶¶ 10-11).  As a result, on

May 6, 1998, Herklotz executed the following document:[3]

---

[3]WRS claims that Herklotz was the producer of The Giant of
Thunder Mountain video.  (Doc. 83, p. 2, ¶ 11).  In fact, with
respect to the events leading to the execution of a credit
application by Parkinson and von Bernuth on July 24, 1998, Jack
Napor, WRS's President, testified during his deposition that the
additional documentation was requested due to the "big job" that
Plaza Entertainment wanted to get done, that is, "John Herklotz's

3

To:  WRS Motion Picture & Video Library
     1000 Napor Boulevard
     Pittsburgh, Pennsylvania 15205

Re:  John Herklotz/Plaza Entertainment
     2322 "A" Via Puerta
     Laguna Hills, CA 92653
     Attn: John Herklotz

To induce you to sell merchandise and/or extend credit to
Debtor and in consideration thereof, Plaza Entertainment and
all of it's (sic) related divisions and subsidiaries hereby,
for good and valuable consideration ... unconditionally
guarantees the complete and prompt payment, when due, of any
indebtedness which may at the present time or at any time
hereafter and from time to time be owing to you by Debtor.
If Debtor shall make an assignment for the benefit of
creditors, or if there shall be filed by or against Debtor,
in any court, a petition in bankruptcy or insolvency or for
reorganization or for the appointment of a receiver or
trustee of all or a portion of Debtor's property, then for
the purpose of this guaranty all indebtedness then owing to
you will forthwith be due and payable.  This guaranty is
direct and unconditional, and may be enforced without first
resort to any other right, remedy or security which you
have.  The undersigned waives notice of acceptance hereof,
all prior notice of default and demand for payment.

You shall have the unrestricted right to renew, extend,
modify and/or compromise any indebtedness, and to accept,
substitute, surrender or otherwise deal with any collateral
security or other guaranties, without notice to the
undersigned and without affecting the obligation of the
undersigned hereunder.

This guaranty shall continue at all times and shall remain
in full force and effect until such time as you shall
receive from the undersigned, by registered mail, written
notice of revocation.  Such notice of revocation shall not
be effective as to any indebtedness existing at the time you

---

job, Giant of Thunder Mountain."  (Doc. 81, Exh. A, pp. 76-77).
Mr. Napor testified further that Herklotz "produced the Giant of
Thunder Motion and wanted to release it."  (Doc. 81, Exh. A, pp.
87-88).  In this connection, the Court notes that Herklotz has
not disputed his personal interest in The Giant of Thunder
Mountain video.

4

shall receive the notice or as to any transaction or
commitment previously undertaken by you in reliance upon
this guaranty.

Any indebtedness of Debtor now or hereafter owed to the
undersigned is hereby subordinated to pay the indebtedness
now or hereafter owing to you. The undersigned agrees to
pay a reasonable attorney's fee and all other costs and
expenses which you may incur in the enforcement of this
guaranty. This guaranty and every part thereof shall inure
to the benefit of the successors and assigns of WRS Motion
Picture & Video Laboratory.

This guaranty cannot be altered, amended or terminated
orally, but only by agreement in writing.

This guaranty shall be construed under the laws of the State
of Pennsylvania.

John Herklotz

(Doc. 1, Exh. B).

On July 24, 1998, Parkinson submitted a credit application

to WRS on Plaza Entertainment's behalf.[4] The terms and

conditions of the credit application required, *inter alia*,

payment for all services performed for Plaza Entertainment by WRS

"within 30 days after such items are invoiced." (Doc. 1, Exh.

A).

As of August 31, 1998, WRS was carrying a significant

receivable amount on Plaza Entertainment's account. (Doc. 81, p.

---

[4]Although the credit application was not executed by
Parkinson until July 24, 1998, WRS claims it was sent to
Parkinson on May 6, 1998, contemporaneously with the guaranty
agreement that was sent to Herklotz for execution. WRS also
claims Herklotz understood that WRS would commence work on The
Giant of Thunder Mountain order from Plaza Entertainment in
reliance on the guaranty he executed in May, 1998. (Doc. 83, pp.
2-3, ¶ 12).

5, ¶ 14, Doc. 83, p. 3, ¶ 14). In order to induce WRS to
continue providing duplication and fulfillment services for Plaza
Entertainment, despite Plaza Entertainment's failure to make
timely payments to WRS, Parkinson and von Bernuth executed a
Services Agreement on October 12, 1998,[5] pursuant to which WRS
agreed to provide administrative services to Plaza Entertainment
(including generation of sales invoices, collection of accounts
receivable, performance of general accounting and record keeping
functions and inventory monitoring and maintenance), in addition

---

[5]According to the Services Agreement, as of August 31, 1998,
Plaza Entertainment owed WRS approximately $685,379.88. (Doc. 1,
Exh. D).

6

to duplication and fulfillment services.⁶  (Doc. 1, p. 6, ¶ 21 and Exh. D, Doc. 81, p. 5, ¶ 15).

The Services Agreement provided for a lockbox arrangement for the receipt of payments on Plaza Entertainment's accounts receivable to be distributed by WRS as set forth in the agreement.  To compensate WRS for the provision of administrative services, the Services Agreement provided for a monthly payment

---

⁶Regarding WRS's provision of administrative services to Plaza Entertainment, due to difficulties being encountered by Plaza Entertainment in connection with the first and second payments to WRS for duplication of The Giant of Thunder Mountain video, on August 28, 1998, Parkinson and von Bernuth sent a fax to WRS which stated in pertinent part:

\*   \*   \*

At one point in time, Joe, there was a discussion regarding the possibility of WRS providing a service of INVOINCING (sic) and COLLECTING on the orders that WRS is already manufacturing and shipping for Plaza.  Perhaps it's time to resurrect these discussions for the reasons that are now obvious: Plaza is not doing a good job of collections, and WRS may need a better form of collateral.  This should be considered soon - certainly within the next four weeks - as in late September we will be shipping more than $3-million worth of new orders (which, will provide very strong collections leverage for the existing, uncollected A.R., but absent (sic) of a better collections mechanism may be viewed with credit-worthy skepticism).

\*   \*   \*

(Doc. 84-4, p. 14).

Following receipt of this fax, WRS sent a draft of an agreement for the provision of administrative services by WRS to the principals of Plaza Entertainment for comment, and the Services Agreement was executed by Parkinson and von Bernuth on October 12, 1998.

7

of $5,000 by Plaza Entertainment, as well as reimbursement by Plaza Entertainment for all out of pocket expenses incurred by WRS to perform the administrative services.  Finally, the Services Agreement provided WRS with a security interest in certain collateral of Plaza Entertainment,[7] and the personal guaranties of Plaza Entertainment's obligations to WRS by Parkinson and von Bernuth.  (Doc. 1, Exh. D, §§ 1, 1.1 and 6).

Plaza Entertainment never cured the delinquency in its account with WRS as contemplated by the Services Agreement. (Doc. 83, p. 4, ¶ 17).  As a result, on October 13, 2000, WRS filed this civil action seeking damages from Plaza Entertainment for breach of contract based on Plaza Entertainment's failure to pay WRS for duplication, fulfillment and administrative services (Count I), and damages from Parkinson, von Bernuth and Herklotz for breach of contract based on their personal guaranties of Plaza Entertainment's obligations to WRS (Count II), as well as foreclosure of a security interest (Count III), injunctive relief (Count IV), declaratory relief (Count V) and an accounting (Count VI).[8]  Defaults have been entered against Plaza Entertainment,

---

[7]The collateral included videocassettes (dubs), masters, sub-masters, stock, packaging and associated services, products and proceeds (including accounts receivable limited to the amount owed to WRS by Plaza Entertainment).  (Doc. 1, Exhs. C-1 and C-2).

[8]The protracted procedural history of this case was summarized in the Court's July 29, 2005 memorandum opinion granting WRS's motion to reopen the case and will not be repeated

8

Parkinson and von Bernuth for failure to defend.   (Doc. 97 and
Doc. 101).   Thus, Herklotz is the only defendant whose liability
remains at issue.[9]

                                III

            Under Rule 56(c) of the Federal Rules of Civil
Procedure, summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."   Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986).   The party moving for summary
judgment "always bears the initial responsibility of informing
the district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of
a genuine issue of material fact."   Id. at 323.   The moving party
can meet this burden by presenting evidence showing there is no
dispute of material fact, or by showing the district court that
the nonmoving party has failed to present evidence in support of

herein.   (Doc. 68).

    [9]In his answer to WRS's complaint, Herklotz filed a
crossclaim against Plaza Entertainment for indemnification, and
crossclaims against Parkinson and von Bernuth for contribution,
breach of fiduciary duty and misrepresentation.   (Doc. 7, pp. 7-
11).

9

some element of its case on which it bears the ultimate burden of proof. Id. at 322-324. Once the moving party has met its burden, Fed.R.Civ.P. 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

IV

## Herklotz's Liability for Plaza Entertainment's Debt to WRS under the May 6, 1998 Surety Agreement

With respect to the nature of surety agreements and Pennsylvania law applicable thereto,[10] in Continental Bank v. Axler, 353 Pa.Super. 409, 510 A.2d 726 (1986), the Superior Court of Pennsylvania stated:

---

[10]The parties agree that the document executed by Herklotz on May 6, 1998 is a surety agreement, rather than a guaranty agreement. Regarding the difference between the two types of agreements, while both guaranty and surety agreements are agreements to be liable for the debt of another, the creditor may look to the surety for immediate payment upon the debtor's default, without first attempting to collect the debt from the debtor, whereas the creditor must first seek payment from the debtor before going after a guarantor. *See* McIntyre Square Assocs. v. Evans, 827 A.2d 446, 451 n.7 (Pa.Super.2003), *citing*, Reuter v. Citizens & Northern Bank, 410 Pa.Super. 199, 208 n.3, 599 A.2d 673, 678 n.3 (1991).

10

* * *

Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform. *See, e.g.*, Meyer v. Industrial Valley Bank and Trust Co., 428 Pa. 577, 239 A.2d 371 (1968)(dissenting opinion by Roberts, J.). In general terms, a suretyship represents a three-party association wherein a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety. Restatement of Security § 82 (1941); J. Murray, Murray on Contracts § 314 (1974); *see* Meyer (dissenting opinion by Roberts, J.); First National Bank and Trust Co. v. Stolar, 130 Pa.Super. 480, 197 A. 499 (1938); Pure Oil Co. v. Shlifer, 115 Pa.Super. 319, 175 A. 895 (1934). The existence of the suretyship is evidenced by a contract. Thommen v. Aldine Trust Co., 302 Pa. 409, 153 A. 750 (1931); Pure Oil Co.; Cohen v. Bank of Philadelphia, 102 Pa.Super. 279, 156 A. 742 (1931).

Usually, suretyship problems arise because the three-party structure of a suretyship becomes dynamic rather than remaining static. After the signing of a suretyship contract, the creditor and the principal debtor may renegotiate the terms of the debtor's obligation to the creditor without obtaining the surety's assent to the changed obligation. When the debtor defaults, the creditor then seeks to have the surety perform the debtor's renegotiated obligation. Commonly, the surety asserts as a defense that he does not have a duty to perform the renegotiated obligation of the principal debtor since he did not consent to be liable for that new obligation. *See, e.g.*, Jacob Sall Building & Loan Association v. Heller, 314 Pa. 237, 171 A. 464 (1934).

Cognizant of the problems posed by the three-party composition of suretyships, Pennsylvania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected. Schroyer v. Thompson, 262 Pa. 282, 105 A. 274 (1918); McClelland v. New Amsterdam Casualty Co., 322 Pa. 429, 184 A. 198 (1936). A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to

the creditor that in essence substitutes an agreement
substantially different from the original agreement on which
the **surety** accepted liability. <u>Koch v. Moyer and Burkhart</u>,
103 Pa.Super. 270, 158 A. 198 (1931); <u>Restatement of
Security § 128, Comment d</u>. Where, without the **surety's**
consent, there has been a material modification in the
creditor-debtor relationship, a gratuitous (uncompensated)
**surety** is completely discharged. <u>Meyer</u> (dissenting opinion
by Roberts, J.); <u>Schroyer</u>. A compensated **surety** is
discharged only if, without the **surety's** consent, there has
been a material modification in the creditor-debtor
relationship and said modification has substantially
increased the **surety's** risk. <u>McClelland</u>; *see also*
<u>Restatement of Security § 128(b)</u>.

\*   \*   \*

353 Pa.Super. at 415-16, 510 A.2d at 729.

Turning first to Herklotz's surety status, Herklotz

maintains that he was a "gratuitous" surety. Therefore,

according to Herklotz, his obligation to WRS was completely

discharged because the October 12, 1998 Services Agreement

between WRS and Plaza Entertainment, which was executed by

Parkinson and von Bernuth without his consent, materially changed

the creditor-debtor relationship between WRS and Plaza

Entertainment.[11] On the other hand, WRS maintains that Herklotz

was a "compensated" surety; that the October 12, 1998 Services

Agreement did not materially modify the creditor-debtor

relationship between WRS and Plaza Entertainment; that, even if

the October 12, 1998 Services Agreement did materially modify the

---

[11]While irrelevant under Pennsylvania law if Herklotz was,
in fact, a gratuitous surety, Herklotz also claims that the
October 12, 1998 Services Agreement significantly increased his
risk as surety.

12

creditor-debtor relationship between WRS and Plaza Entertainment, Herklotz consented to such modification in the May 6, 1998 surety agreement; and that, in any event, the October 12, 1998 Services Agreement did not substantially increase Herklotz's risk as surety for Plaza Entertainment's debt to WRS. Thus, WRS contends that Herklotz is liable as surety for the debt of Plaza Entertainment to WRS.

Based on the undisputed facts, the Court concludes that Herklotz was a compensated surety. There is no evidence that Herklotz executed the May 6, 1998 surety agreement "for reasons involving familial or neighborly affection" or that his execution of the May 6, 1998 surety agreement "was motivated by selfless generosity." *See* Garden State Tanning, Inc. v. Mitchell Manufacturing Group, Inc., 273 F.3d 332, 336 (3d Cir. 2001)(applying Pennsylvania law and holding that nothing in the circumstances suggested that parent corporation's guaranty of subsidiary's debt was gratuitous).

Rather, as a principal of Plaza Entertainment and the producer of The Giant of Thunder Mountain video, Herklotz had a personal interest in signing the May 6, 1998 surety agreement: that is, to ensure that WRS continued to provide duplication and fulfillment services to Plaza Entertainment. *See, e.g.,* First National Bank of East Conemaugh v. Davies, 315 Pa. 59, 172 A. 296 (1934)(corporate directors who executed surety contract in

13

connection with corporation's debts to bank were not gratuitous
sureties because, as directors of the corporation and otherwise
interested in the transaction leading up to the surety contract,
they were in a different class); In re Cancelmo's Estate, 308 Pa.
178, 162 A. 454 (1932)(the decedent was not simply a surety
because he had a personal interest in the company whose
obligations he was guaranteeing since he was one of its officers
and stockholders; the law is not so tender to him as to one who
was not being personally obliged by the loan of the bank's
money); Fessenden Hall of Pa., Inc. v. Mountainview Specialties,
Inc., 863 A.2d 578 (Pa.Super.2004)(sole shareholder of "old"
corporate debtor, who signed contract guaranteeing debtor's
debts, was a compensated guarantor; thus, shareholder was
estopped from claiming that he was not responsible under guaranty
contract for debt of "new" corporate debtor to which all of old
debtor's assets, including its name, were sold, where creditor
would not have extended credit to old corporate debtor without an
individual guaranty, shareholder failed to notify creditor of
change in debtor's ownership without a change in name, and
shareholder was still the only person with whom creditor dealt
following sale); McIntyre Square Assocs. v. Evans, 827 A.2d 446
(Pa.Super.2003)(sureties to commercial lease agreement were
compensated sureties, and, thus, would only be discharged if,
without their consent, there was a material modification in the

14

lease agreement which substantially increased their risk, where sureties were officers and owners of tenant when entering into surety agreement); J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269 (Pa.Super.2002)(surety who was president and sole shareholder of buyer corporation was not a gratuitous, uncompensated surety to be completely discharged of his obligations upon a material modification of seller's and buyer's creditor-debtor relationship without surety's consent, even if surety was not compensated for signing guaranty, where, in exchange for guaranty, seller extended a line of credit to buyer).

Based on Herklotz's status as a compensated surety, he is discharged from his obligation to WRS for Plaza Entertainment's debt only if the October 12, 1998 Services Agreement constituted a material modification in the creditor-debtor relationship between WRS and Plaza Entertainment *and* the modification substantially increased his risk. After consideration, the Court concludes that neither prong is satisfied in this case. Therefore, Herklotz is liable as surety for the debt of Plaza Entertainment to WRS.

As to the issue of whether the October 12, 1998 Services Agreement materially modified the creditor-debtor relationship between WRS and Plaza Entertainment, the Court agrees with WRS that the agreement "simply transferred the billing and collection

15

function from Plaza [Entertainment] to WRS" (Doc. 84-1, p. 9),
due to Plaza Entertainment's recognition that it was "not doing a
good job of collections." (Doc. 84-4, p. 14). In all other
respects, the manner in which WRS and Plaza Entertainment
conducted business remained the same. Under the circumstances,
the October 12, 1998 Services Agreement cannot be construed as
"an agreement substantially different from the original agreement
on which the surety accepted liability." Continental Bank,
*supra*.

Moreover, even if the October 12, 1998 Services Agreement
could be construed as a material modification of the creditor-
debtor relationship between WRS and Plaza Entertainment, the
agreement did not substantially increase Herklotz's risk. In
fact, as noted by WRS, the October 12, 1998 Services Agreement
decreased Herklotz's risk as surety for Plaza Entertainment's
debt to WRS by providing (1) additional collateral as security,
(2) personal guaranties of Plaza Entertainment's obligations to
WRS by Parkinson and von Bernuth, and (3) procedures to ensure
that Plaza Entertainment's accounts receivable would be applied
to its debt to WRS.

Finally, with respect to Herklotz's alternative motion for
partial summary judgment on the issue of liability, Herklotz
asserts that, if the Court declines to fully discharge his
obligation to WRS under the May 6, 1998 surety agreement, the

16

obligation to WRS should be limited to the amount owed by Plaza

Entertainment as of the date Plaza Entertainment defaulted on its

payments to WRS.  Herklotz offers no support for this assertion,

and the Court can find none.  Significantly, the May 6, 1998

surety agreement specifically provides: "This guaranty shall

continue at all times and shall remain in full force and effect

until such time as [WRS] shall receive from [Herklotz], by

registered mail, written notice of revocation.  Such notice of

revocation shall not be effective as to any indebtedness existing

at the time [WRS] shall receive the notice or as to any

transaction or commitment previously undertaken by [WRS] in

reliance on this guaranty."  Because there is no evidence that

Herklotz ever gave written notice of revocation to WRS by

registered mail, there is no basis for limiting his liability to

WRS for Plaza Entertainment's obligations as asserted.

     Based on the foregoing, WRS's motion for summary judgment as

to Herklotz's liability will be granted, and Herklotz's cross-

motion for summary judgment as to liability will be denied.

Damages Recoverable by WRS

     Herklotz also seeks judgment in his favor as a matter of law

with respect to WRS's damages.  Specifically, Herklotz claims

that WRS's damages reasonably cannot be calculated "due to poor

recordkeeping, failure to produce documentation, or its inability

to produce documentation because records were never maintained in

the first instance."   (Doc. 80, pp. 5-6).   After consideration of

WRS's response to Herklotz's argument regarding damages,

including the affidavit of Jack Napor, who was the President of

WRS, concerning the business records on which WRS will rely to

prove its damages claim, Herklotz's motion for summary judgment

as to damages will be denied.


Date: July **21**, 2006

                              Arthur J. Schwab
                              United States District Judge
                                      for
                              William L. Standish
                              United States District Judge


18