IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WRS, INC., d/b/a WRS MOTION<br>PICTURE LABORATORIES, a<br>corporation, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 00-2041 |
| | ) |
| PLAZA ENTERTAINMENT, INC., a<br>corporation, ERIC PARKINSON,<br>CHARLES von BERNUTH and JOHN<br>HERKLOTZ, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

MEMORANDUM

I

Before the Court is the motion of plaintiff, WRS, Inc.

("WRS"), for summary judgment as to damages against defendant

John Herklotz ("Herklotz"). For the reasons set forth below, the

motion will be granted.

II

The relevant procedural history of this case may be

summarized as follows:[1]

WRS asserted breach of contract claims against defendants,

Plaza Entertainment, Inc. ("Plaza Entertainment"), Eric Parkinson

---

[1]The protracted procedural history of this case was
summarized in a July 29, 2005 Memorandum Opinion granting WRS's
motion to reopen the case (Doc. No. 68), which was filed by the
Honorable William L. Standish to whom the case was originally
assigned, and will not be repeated herein.

("Parkinson"), Charles von Bernuth ("von Bernuth") and Herklotz. WRS's claims arose out of (1) Plaza Entertainment's failure to pay WRS for duplicating videocassettes ordered by Plaza Entertainment and shipped to Plaza Entertainment's customers;[2] (2) Plaza Entertainment's failure to pay WRS for billing and collection services provided to Plaza Entertainment pursuant to a Services Agreement dated October 12, 1998;[3] and (3) the individual defendants' execution of personal guaranties of Plaza Entertainment's obligations to WRS.[4]   (Doc. No. 1).

---

[2]Plaza Entertainment was created to commercially exploit film and video titles through licenses, assignments or other transfers of rights by the producers or owners of the copyrights in the film and video titles.  Parkinson, von Bernuth and Herklotz were shareholders, owners and/or principals of Plaza Entertainment.  The business relationship between WRS and Plaza Entertainment began in 1996, which was the year that Plaza Entertainment was formed.

[3]The October 12, 1998 Services Agreement was executed by Plaza Entertainment, Parkinson and von Bernuth to induce WRS to continue providing videocassette duplication services for Plaza Entertainment, despite its failure to make timely payments to WRS for such services.  Pursuant to the Services Agreement, WRS agreed to provide billing and collection services for Plaza Entertainment for a monthly fee of $5,000.00.  With respect to the collection services, the Services Agreement provided for a lock box arrangement for the receipt of payments on Plaza Entertainment's accounts receivable to be distributed by WRS as set forth in the agreement.

[4]Herklotz executed an unconditional guaranty of Plaza Entertainment's obligations to WRS on May 6, 1998.  (Doc. No. 116, Exh. 7).  The personal guaranties of Parkinson and von Bernuth were set forth in the October 12, 1998 Services Agreement between WRS and Plaza Entertainment.  (Doc. No. 115, Exh. 5).

2

On February 24, 2006, Herklotz filed a motion for summary judgment or, alternatively, for partial summary judgment. (Doc. No. 81). Subsequently, a settlement conference was scheduled for March 9, 2006, after which a Case Management Order was entered by the Court directing WRS and von Bernuth to file cross-motions for summary judgment with respect to the issue of liability by March 23, 2006.

On March 23, 2006, WRS filed motions for summary judgment as to liability against von Bernuth and Herklotz.[5] (Doc. Nos. 88 and 91). Also on March 23, 2006, the Court entered an Order in connection with an agreement among WRS, von Bernuth and Herklotz to retain a forensic accountant to review the records of WRS relating to its alleged damages as suggested by the Court at the March 9th settlement conference. In summary, the March 23rd Order provided that WRS, von Bernuth and Herklotz would retain the accounting firm of Schneider Downs to review WRS's records pertaining to the account of Plaza Entertainment and provide an advisory opinion as to the amount of the outstanding balance on Plaza Entertainment's account, if any; that WRS, von Bernuth and Herklotz would share the cost of Schneider Downs' services equally; that any party could use the report prepared by

---

[5]Despite the Court's Case Management Order directing von Bernuth to file a motion for summary judgment on the issue of his personal liability to WRS for Plaza Entertainment's obligations by March 23, 2006, he failed to do so.

3

Schneider Downs in their case, although no party was bound by it; and that the agreement to retain Schneider Downs did not preclude any party to the agreement from retaining another forensic accountant to perform a review of WRS's records and render an advisory opinion regarding WRS's alleged damages in this case. (Doc. No. 87).

Based on their failure to continue to defend against WRS's breach of contract claims, defaults were entered by the Clerk of Court against Plaza Entertainment and Parkinson on April 11, 2006 and against von Bernuth on April 28, 2006.[6] (Doc. Nos. 97 and 101). Following the entry of the defaults, Herklotz was the only defendant whose liability to WRS remained at issue,[7] and, on July 21, 2006, the Court filed a Memorandum Opinion and Order denying Herklotz's motion for summary judgment or, alternatively, for

---

[6]Although von Bernuth, through counsel, initially agreed to participate with WRS and Herklotz in the retention of a forensic accountant to review WRS's records and provide an advisory opinion concerning its alleged damages, he subsequently reneged on the agreement and failed to defend WRS's claims any further, resulting in the entry of the default against him on April 28, 2006.

[7]WRS's breach of contract claim against Herklotz was not the only remaining claim in this case, however. In his answer to WRS's complaint, Herklotz filed a crossclaim against Plaza Entertainment for indemnification, and crossclaims against Parkinson and von Bernuth for contribution, breach of fiduciary duty and misrepresentation. (Doc. No. 7). On September 26, 2006, Herklotz filed a motion to transfer the remaining claims to the United States District Court for the Central District of California, where all of the defendants reside, for trial. (Doc. No. 108).

4

partial summary judgment, and granting WRS's motion for summary judgment on the issue of Herklotz's liability for Plaza Entertainment's obligations to WRS based on the personal guaranty executed by Herklotz on May 6, 1998.[8]   (Doc. No. 104).

WRS has filed a motion for summary judgment as to damages against Herklotz, which has been fully briefed by both parties. (Doc. Nos. 113-17, 125-32).   Thus, the motion is ripe for decision.[9]

III

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[8]In so ruling, the Court concluded that Herklotz was a compensated surety, rather than a gratuitous surety, and, therefore, Herklotz would be discharged from his obligation to WRS for Plaza Entertainment's debt only if the Services Agreement executed by WRS and Plaza Entertainment on October 12, 1998 constituted a material modification in the creditor-debtor relationship between WRS and Plaza Entertainment *and* the modification substantially increased Herklotz's risk; that the October 12, 1998 Services Agreement did not constitute a material modification in the creditor-debtor relationship between WRS and Plaza Entertainment; and that, even if the October 12, 1998 Services Agreement did constitute a material modification in the creditor-debtor relationship between WRS and Plaza Entertainment, the modification did not substantially increase Herklotz's risk as surety.

[9]In addition to the materials submitted in support of, and in opposition to, WRS's motion for summary judgment as to damages against Herklotz, counsel for the parties appeared before the Court on January 31, 2007, to answer specific questions regarding WRS's calculation of its damages and attorney's fees and Herklotz's objections thereto.

5

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The moving party can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Fed.R.Civ.P. 56(e) **"requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"** Id. at 324. See also Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). After the nonmoving party has

6

responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(c).

With respect to motions for summary judgment on the issue of damages, as noted by WRS,[10] summary judgment as to damages is appropriate when there is no genuine issue of material fact as to the amount owed to the plaintiff by the defendant.  *See, e.g.*, Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America, 187 F.3d 415 (4th Cir.1999)(District court was required to hold that appropriate denominator to be used in calculating mine operator's fixed daily costs, for purposes of calculating damages from union for unauthorized work stoppage, was actual number of days mine was in operation during year rather than number of days in a year, where in its motion for summary judgment operator submitted actual costs verified by affidavits, and union neither submitted affidavit with alternate calculations nor submitted affidavit stating why certain evidentiary facts could not be presented with its motion); LINC Finance Corp. v. Onwuteaka, 129 F.3d 917 (7th Cir.1997)(In collection action brought by lessor against lessee of machine, lessee's bare assertion that claimed amounts must be inaccurate was insufficient to avoid summary judgment on calculation of sales

---

[10]*See* Doc. No. 114, p. 3.

7

taxes, personal property taxes, and late payment fees, in face of lessor's detailed affidavit calculating damages and district court's careful attention to the issue in collection action); Chrysler Credit Corp. v. Marino, 63 F.3d 574 (7th Cir.1995) (Affidavit submitted by debtor's controller was insufficient to create genuine issue of material fact as to amount of debt owed to creditor by debtor, for purposes of action on guaranty of debt, where affidavit simply attempted to prove existence of credits and offsets against debt, defense which guarantor waived in guaranty agreement); Resolution Trust Corp. v. Starkey, 41 F.3d 1018 (5th Cir.1995)(Resolution Trust Corporation established prima facie case for recovery on promissory note executed by debtor in favor of insolvent bank by establishing, through verified affidavit of site manager responsible for managing business records of bank, the date of note's execution, the maker, payee, principal amount and balance due, amount of any accrued interest, and date of default).

IV

### Damages and Interest

WRS seeks the following damages and interest from Herklotz based on his personal guaranty of Plaza Entertainment's obligations to WRS:

8

| (1) | Outstanding Balance on Plaza Entertainment's Account as of August 3, 2001[11] | $1,096,636.11 |
|---|---|---|
| (2) | Interest as of October 13, 2006 on Outstanding Balance of Plaza Entertainment's Account | $1,219,914.67 |
| (3) | Storage Charges for the period August 1, 2001 to May 31, 2006[12] | $    38,350.00 |
| (4) | Interest as of May 31, 2006 on Storage Charges | $    12,080.25 |
| (5) | Administrative Services Fee for the period November 1998 through December 2000[13] | $  125,000.00 |
| TOTAL | | $2,491,981.03 |

(Doc. No. 115, ¶ 16).

In support of its motion for summary judgment as to damages against Herklotz, WRS has submitted the affidavit of its President, Jack Napor ("Napor"), attesting to the following:

---

[11]No payments were received by WRS on Plaza Entertainment's account after August 3, 2001.  (Doc. No. 115, ¶ 8).

[12]The storage charges owed to WRS by Plaza Entertainment were calculated through May 31, 2006, when WRS lost control of its facility.  (Doc. No. 115, ¶ 14).

[13]As noted previously, the obligation of Plaza Entertainment to pay WRS a monthly fee of $5,000.00 for administrative services arises out of the October 12, 1998 Services Agreement.  The agreement, however, does not provide for the payment of interest on any outstanding fees for administrative services.  Therefore, WRS has not made a claim for interest on the unpaid fees for administrative services.

9

(a) his personal knowledge of the manner in which records were, and are, kept in the ordinary and usual course of WRS's business;

(b) the fact that the transactions reflected in the records pertaining to Plaza Entertainment's account with WRS were placed in the records at or near the time the transactions occurred;

(c) the fact that WRS's records account for all sales made by WRS to Plaza Entertainment and for all payments received by WRS from Plaza Entertainment or its customers;

(d) the fact that no payments were received by WRS on Plaza Entertainment's account after August 3, 2001;

(e) an outstanding balance on Plaza Entertainment's account as of August 3, 2001 in the amount of $1,324,841.61;[14]

(f) the fact that each invoice sent to Plaza Entertainment by WRS included a term providing for interest on past due invoices at the rate of 1½% per month or 18% annually;[15]

(g) the manner in which interest was calculated;

(h) the fact that WRS stored 65 pallets of material for Plaza Entertainment from August 1, 2001 through May 31, 2006;

---

[14]This figure includes interest on Plaza Entertainment's outstanding balance through December 31, 2000 in the amount of $228,205.50.  (Doc. No. 115, ¶ 16).

[15]*See* Doc. No. 115, Exh. 3.

10

(i) the fact that WRS rendered administrative services for
Plaza Entertainment (pursuant to the October 12, 1998 Services
Agreement) from November 1998 through December 2000;[16] and

(j) the fact that WRS retained Thomas E. Reilly, Esquire in
2000 to pursue the debt of Plaza Entertainment to WRS.
(Doc. No. 115).

WRS also submitted business records and other documents in
support of its motion for summary judgment as to damages against
Herklotz.  First, WRS submitted a copy of a document captioned
"Transaction by Customer Inquiry Report, Receivables Management"
for Plaza Entertainment's account dated September 13, 2005, which
shows the transactions on Plaza Entertainment's account through
August 3, 2001.  (Doc. No. 115, Exh. 1).  Second, WRS submitted a
copy of a document captioned "Aged Trial Balance with Options,
Receivables Management Report" dated February 19, 2001, which

---

[16]In the brief filed in opposition to WRS's motion for
summary judgment as to damages, Herklotz objects to this item of
damages based on WRS's failure to produce invoices submitted to
Plaza Entertainment in connection with the monthly administrative
services fee.  (Doc. No. 126, pp. 14-15).  Napor addresses this
issue in a supplemental affidavit which was filed by WRS in
support of its motion for summary judgment as to damages.
Specifically, Napor attests to the fact that administrative
services fees were to be paid to WRS out of the distributions
from the lock box which was maintained pursuant to the October
12, 1998 Services Agreement.  However, the funds distributed
pursuant to the lock box arrangement were never sufficient to pay
the monthly administrative services fees.  Therefore, all of the
funds collected through the lock box were applied to the
outstanding balance on Plaza Entertainment's account with WRS.
(Doc. No. 132, ¶ 8).  Herklotz has submitted no evidence to
controvert Napor's supplemental affidavit in this regard.

shows the balance on Plaza Entertainment's account as of December 31, 2000. (Doc. No. 115, Exh. 2). Third, WRS submitted a copy of Plaza Entertainment's Account Application which includes a term providing for a monthly storage charge "for all materials left with [WRS] beyond the primary manufacturing period," as well as a copy of an invoice dated August 10, 2001 showing a monthly storage charge of $650.00 for the month of July 2001.[17] (Doc. No. 115, Exhs. 3 and 4). Fourth, WRS submitted a copy of the October 12, 1998 Services Agreement between WRS and Plaza Entertainment pursuant to which WRS was entitled to receive a monthly fee of $5,000.00 for providing administrative services to Plaza Entertainment. (Doc. No. 115, Exh. 5). Finally, WRS submitted a copy of the report prepared by Schneider Downs based on its review of WRS's records in which the following opinions were rendered: (a) WRS applied a reasonable basis of accounting with respect to the accounts receivable, revenue and cash receipts cycle surrounding Plaza Entertainment's account, and (b) the accounts receivable balance of $1,270,683.34 for Plaza Entertainment's account as of December 31, 2000 appears to be reasonably stated. (Doc. No. 116, Exh. 6).

---

[17]To compute the monthly storage charge owed by Plaza Entertainment pursuant to the Terms and Conditions of its Account Application, WRS multiplied 65 (the number of pallets of material stored for Plaza Entertainment) by $10.00 (the monthly storage fee for each pallet of material). (Doc. No. 115, ¶ 14).

12

In opposition to WRS's motion for summary judgment as to damages, Herklotz essentially raises three arguments. First, Herklotz argues that the unreliability of WRS's records precludes its claim for damages. Second, Herklotz argues that the review of WRS's records by Schneider Downs was flawed. Third, Herklotz argues that in the event WRS is entitled to recover damages based on his personal guaranty of Plaza Entertainment's obligations, the amount of damages recoverable by WRS should be reduced due to its failure to mitigate damages.

With respect to the alleged unreliability of WRS's records, the Court concludes that Herklotz has failed to present evidence showing that there is a genuine issue for a trial on damages as required by Fed.R.Civ.P. 56(e). As to the alleged flaws in the review of WRS's records conducted by Schneider Downs, the Court concludes that Herklotz has misconstrued the scope of the review which Schneider Downs was retained to perform, as well as the position of WRS regarding the weight to be given to the report prepared by Schneider Downs. Finally, in connection with WRS's alleged failure to mitigate damages, the Court concludes, among other things, that Herklotz waived this affirmative defense.

i

Regarding Herklotz's challenge to the reliability of WRS's records, counsel for Herklotz conceded in Court on January 31, 2007 that no evidence had been filed by Herklotz to dispute any

13

particular entry on Exhibits 1 and 2 to the Napor affidavit,
which show the outstanding balances on Plaza Entertainment's
account with WRS as of August 3, 2001 and December 31, 2000,
respectively.[18]   Instead, Herklotz relies on speculative
arguments in the brief filed in opposition to WRS's motion for
summary judgment as to damages and his submission of an affidavit
which is devoted, in large part, to (a) describing his
biographical and professional information; (b) providing
background information on the formation of Plaza Entertainment
and his decision to become affiliated with it; (c) criticizing
the business practices of WRS, *i.e.*, continuing to extend credit
to Plaza Entertainment despite its poor payment history and
failing to utilize a lock box arrangement for the collection of
Plaza Entertainment's accounts receivable sooner; (d) commenting
on the conduct of Thomas Gehring, an attorney who was a principal
of Plaza Entertainment at the time of the execution of the
October 12, 1998 Services Agreement (but declined to sign the
agreement as a personal guarantor) and who represented Herklotz
in an action against Santa Monica Pictures in 1997 and 1998, and
the law firm with which he was associated, Jenkins & Gilchrist;
(e) noting his inability to reconcile the calculations of Plaza

---

[18]Similarly, counsel for Herklotz acknowledged that he had
filed nothing of record to dispute the interest calculation
performed by WRS in connection with the outstanding balance on
Plaza Entertainment's account.

14

Entertainment's obligation to WRS which are set forth in the
Napor affidavit; and (f) criticizing the examination of WRS's
records by Schneider Downs.  (Doc. No. 128, Exh. 25).

     The only specific challenges to WRS's records in Herklotz's
affidavit relate to Herklotz's discovery of an uncashed check in
WRS's files which had been issued by Plaza Entertainment in the
amount of $100,000.00 and was not accounted for in WRS's records
(Doc. No. 128, Exh. 25, ¶ 17 and Exh. 11 to Exh. 25), and
Herklotz's failure to find any credits in WRS's records for
payments from Library Video Company in connection with Purchase
Order Numbers 000054199, 000053032 and 000053461.  (Doc. No. 128,
Exh. 25, ¶ 32 and Exh. 17 to Exh. 25).  In response to these
challenges, WRS submitted a supplemental affidavit from Napor.
(Doc. No. 132).  Regarding the uncashed $100,000.00 check from
Plaza Entertainment which is dated June 29, 1999, Napor attests
to the fact that it was Parkinson's practice to send a check to
WRS with instructions on when the check could be deposited, and
that, to the best of his knowledge, Parkinson never advised WRS
to deposit the check because Plaza Entertainment did not have
sufficient funds to cover the check.  (Doc. No. 132, ¶ 7).  As to
the three purchase orders from Library Video Company for videos
duplicated by WRS for Plaza Entertainment which total $446.07,
Napor attests to the fact that the purchase orders did not
represent efforts by WRS to fulfill orders for Plaza

                              15

Entertainment.  Rather, in an effort to reduce the outstanding balance on Plaza Entertainment's account, WRS attempted to sell videos belonging to Plaza Entertainment pursuant to the Terms and Conditions of Plaza Entertainment's Account Application. Therefore, the video sales to Library Video Company would not have been shown as a service rendered to Plaza Entertainment or billed to Plaza Entertainment on an invoice.  However, if payments had been received from Library Video Company for videos belonging to Plaza Entertainment, the payments would have been reflected as a credit to Plaza Entertainment on the Accounts Receivable Management Reports of WRS, and, to the best of Napor's knowledge, WRS never received any payments from Library Video Company in connection with Purchase Order Numbers 000054199, 000053032 and 000053461.  (Doc. No. 132, ¶ 10).

No evidence has been submitted by Herklotz to dispute the facts attested to in Napor's supplemental affidavit regarding the uncashed $100,000.00 check or the purchase orders from Library Video Company.  Therefore, Herklotz has failed to raise a genuine issue of material fact with respect to the only specific challenges to WRS's records that are raised in his affidavit.[19]

---

[19]In response to WRS's motion for summary judgment as to damages, it was incumbent upon Herklotz, as an unconditional guarantor, to establish payments by Plaza Entertainment to WRS or other credits which were not reflected in WRS's records.  He simply has failed to do so.  Moreover, with respect to any invoice adjustments to which Plaza Entertainment may have been entitled, as noted by WRS (Doc. No. 114, pp. 5-6), under the

16

ii

Turning to Herklotz's argument that the review of WRS's

records by Schneider Downs was flawed, in his affidavit, Herklotz

argues that "[t]here are a number of significant 'red flags' in

the material that Schneider Downs apparently ignored or failed to

comment on," including WRS's credit policies and its allowance of

Plaza Entertainment to "run up over $1 million in unpaid bills."

(Doc. No. 128, Exh. 25, ¶ 16).  Herklotz's argument in this

regard overlooks the fact that Schneider Downs was not retained

to review WRS's credit policies or to render an opinion as to

WRS's business judgment.[20]  Rather, Schneider Downs was retained

---

Terms and Conditions of Plaza Entertainment's Account Application
with WRS, any claim that Plaza Entertainment may have had against
WRS for an adjustment or which in any way affected an invoice
from WRS must have been presented to WRS in writing no later than
30 days from the date of the invoice at issue or the claim was
irrevocably waived (Doc. No. 115, Exh. 4), and there is
absolutely no evidence that Plaza Entertainment ever sought an
adjustment or made any claim in connection with an invoice issued
by WRS.  Accordingly, Herklotz is precluded from challenging any
invoices submitted to Plaza Entertainment by WRS.

[20]In the brief submitted in opposition to WRS's motion for
summary judgment as to damages, Herklotz raises a related
argument.  Specifically, it is Herklotz's contention that
Parkinson and von Bernuth "routinely ignored corporate
formalities in connection with the operation of their various
businesses, and may have deliberately caused the reported amounts
owing by Plaza to be in error, with or without the active
participation by WRS."  (Stated differently, Herklotz argues that
work which was performed by WRS for other businesses owned by
Parkinson and von Bernuth "may have" been charged to Plaza
Entertainment).  Herklotz maintains that Schneider Downs'
"failure to investigate these allegations raises serious
questions as to the accuracy of the analysis and conclusions in
the Schneider Downs Report."  (Doc. No. 126, p. 7).  Again,

17

merely to review the records of WRS and provide an advisory

opinion concerning the issue of whether the records reasonably

reflect the amount of the outstanding balance on Plaza

Entertainment's account with WRS.[21]

As to the weight to be given to the report of Schneider

Downs, contrary to Herklotz's characterization of WRS's

position,[22] WRS is not arguing that the Schneider Downs report is

dispositive of its claim for damages.  Moreover, the Court does

not view the report of Schneider Downs as dispositive.  Rather,

the report merely provides additional support for the

reasonableness of the business records submitted by WRS with the

affidavit of Napor in support of its motion for summary judgment

as to damages.[23]  *See, e.g.*, Huge v. Reid, 468 F.Supp. 1024

---

Schneider Downs was not retained to investigate the practices of
Parkinson and von Bernuth in connection with the operation of
their various businesses.  Most significantly for purposes of
WRS's motion for summary judgment as to damages, however, is the
fact that Herklotz's allegation in this regard is based entirely
on speculation.  He has presented absolutely no evidence to
support the allegation.

[21]With respect to WRS's burden of proof on the issue of
damages, both parties agree that WRS must establish its damages
with reasonable certainty.  The damages need not be proven with
absolute certainty.  (Doc. No. 114, p. 5, Doc. No. 126, p. 4).

[22]*See* Doc. No. 126, p. 6.

[23]In this connection, the Court notes that Herklotz could
have retained his own forensic accountant to review WRS's records
and render an advisory opinion concerning the outstanding
balance, if any, on Plaza Entertainment's account with WRS.  In
addition, Herklotz could have deposed Napor with respect to the
matters attested to in Napor's affidavit.  He chose, however, not

18

(N.D.Ala.1979), *aff'd without opinion*, 615 F.2d 916 (5th Cir.
1980)(In an action to collect contributions allegedly due from
employer to trustees of an employee pension and benefit plan
pursuant to a collective bargaining agreement, since contractual
obligation was admitted and only issue was amount of
indebtedness, summary judgment was appropriate where plaintiff
submitted a detailed affidavit and results of audit by public
accountant, and where employer did not controvert the audit with
any documentary or other evidence from its own records but merely
asserted promises of factual controversion, which were never
forthcoming).

### iii

Finally, regarding WRS's alleged failure to mitigate its
damages, Herklotz asserts that WRS had an obligation to "act in a
commercially reasonable manner once it became aware of a possible
claim against Defendant Herklotz under his personal guaranty,"
and that "[d]espite this basic tenet of Pennsylvania law
regarding damages, WRS, while it was actively performing
additional work for Plaza, was well aware that it was not being
paid for work already performed, let alone being paid for work
currently being performed."  (Doc. No. 126, p. 11).  Based on the
foregoing assertion, Herklotz maintains that he "is entitled to

---

to pursue either of these avenues in his defense of WRS's claim
for damages, and he did so at his own peril.

put forth a case attacking the appropriateness of the additional
indebtedness incurred by WRS from the time he first signed his
personal guaranty for the benefit of Plaza." (Doc. No. 126, p.
12).

After consideration, the Court concludes that Herklotz's
assertion of the defense of failure to mitigate damages is
unavailing. As noted by WRS,[24] Herklotz waived the affirmative
defense of failure to mitigate damages by failing to raise the
defense in his answer to the complaint in this action.[25] (Doc.
No. 7). However, even if the defense had not been waived, the
defense is unavailing in light of the personal guaranty executed
by Herklotz on May 6, 1998. Specifically, the guaranty, by its
very terms, was unconditional, contemplated an ongoing
relationship between WRS and Plaza Entertainment, and provided
for WRS's unrestricted right to extend the indebtedness of Plaza
Entertainment without notice to Herklotz. In fact, as noted by

---

[24]*See* Doc. No. 129, p. 4.

[25]With respect to the defense of failure to mitigate
damages, it should also be noted that "an injured party is not
obligated to mitigate damages when both he and the liable party
had an equal opportunity to do so," *see* Ecksel v. Orleans
Construction Co., 519 A.2d 1021, 1028 (Pa.Super.1987), *citing*,
Loyal Christian Benefit Assoc. v. Bender, 493 A.2d 760, 763
(Pa.Super.1985), and S.J. Groves & Sons Co. v. Warner Co., 576
F.2d 524, 530 (3d Cir.1978), and, under the express terms of the
May 6, 1998 guaranty agreement, Herklotz had the right to revoke
the guaranty at any time by sending a written notice of
revocation to WRS by registered mail. He never did so.

WRS,[26] the very purpose of the guaranty was to induce WRS to continue providing duplication services for Plaza Entertainment, and, in particular, to duplicate a large order for a film produced by Herklotz, despite Plaza Entertainment's poor payment history and outstanding account balance. In light of the foregoing, it is disingenuous of Herklotz, who is a certified public accountant and a very experienced businessman,[27] to argue that he is entitled to attack the appropriateness of the additional indebtedness incurred by WRS from the time he first executed the guaranty. In the Court's view, Herklotz's argument relating to WRS's failure to mitigate damages is more appropriately characterized as an argument against liability, an issue which already has been decided.

iv

In sum, based on the Napor affidavits and the business records and other documents submitted by WRS in support of its motion for summary judgment as to damages against Herklotz, as well as the report prepared by Schneider Downs which lends further support for WRS's summary judgment submissions, the Court concludes that WRS has met its burden of establishing damages with reasonable certainty. Further, in light of Herklotz's failure in accordance with Fed.R.Civ.P. 56(e) to controvert the

---

[26]*See* Doc. No. 129, p. 3.

[27]*See* Doc. No. 128, ¶ 4.

21

evidence submitted by WRS in support of its motion for summary

judgment as to damages, WRS is entitled to a judgment in its

favor as a matter of law in the amount of $2,491,981.03.

## Attorney's Fees

WRS also seeks attorney's fees from Herklotz pursuant to the

Terms and Conditions of Plaza Entertainment's Account Application

(Doc. No. 115, Exh. 4), the October 12, 1998 Services Agreement

between WRS and Plaza Entertainment (Doc. No. 115, Exh. 5) and

the personal guaranty executed by Herklotz on May 6, 1998.  (Doc.

No. 116, Exh. 7).  WRS has calculated the attorney's fees

incurred to pursue payment of Plaza Entertainment's debt as

follows:

| | | |
|---|---|---|
| (1) | Attorney's Fees through October 13, 2006 | $86,748.00 |
| (2) | Attorney's Fees from October 13, 2006 to December 19, 2006 | $ 6,020.00 |

Total                                                    $92,768.00[28]

In opposing WRS's claim for attorney's fees, Herklotz argues

that "a significant number of [counsel's time] entries are not

properly chargeable to [him] under any factual or legal theory."

(Doc. No. 126, p. 17).  In support of this argument, Herklotz

---

[28]From the commencement of his representation of WRS in this
case until approximately July 2002, the hourly rate of WRS's
counsel was $175.00.  Thereafter, counsel and WRS entered into a
new arrangement with the approval of the Bankruptcy Court,
permitting counsel to charge an hourly rate of $200.00.  (Doc.
No. 117, ¶¶ 6-7).

22

cites entries from counsel's time sheets for May 16, 2006 and May 23, 2006, stating that these entries "may not" be subject to his personal guaranty."[29]  (Doc. No. 126, p. 18).

Herklotz's opposition to WRS's claim for attorney's fees suffers from the same deficiency as his opposition to WRS's claim for damages.  Simply stated, contrary to the requirements of Fed.R.Civ.P. 56(e), Herklotz has failed to submit evidence to controvert the requested attorney's fees which are supported by counsel's affidavit and time records.[30]  In addition, based on the representations of WRS's counsel in response to questions by the Court during the proceeding on January 31, 2007, concerning the nature of the services for which attorney's fees are sought, the Court is satisfied that all of the requested attorney's fees relate to services performed in connection with the recovery of Plaza Entertainment's debt to WRS.[31]

---

[29]Specifically, Herklotz contends that "a large number of the entries appear to relate to general business advice rendered by Mr. Reilly to Mr. Napor and/or WRS and have nothing whatsoever to do with collection of amounts pursuant to the guaranty executed by Mr. Herklotz."  (Doc. No. 126, p. 17).

[30]During the proceeding before the Court on January 31, 2007, counsel for Herklotz conceded that no evidence had been filed to challenge the reasonableness of the hourly rates requested for the services of WRS's counsel or the number of hours for which fees are sought.

[31]Specifically, in response to questioning by the Court, WRS's counsel indicated that after this case was filed, WRS filed for bankruptcy and he had to be appointed by the Bankruptcy Court to continue to pursue this action.  Thus, the services provided to WRS in connection with its bankruptcy were tied to his

23

With respect to the hourly billing rates charged by WRS's counsel, the Court finds that such rates are reasonable based upon the local community standards, counsel's level of experience and skill, and the Court's personal experience in such matters. As to the number of hours for which attorney's fees are sought, the Court, after undertaking its review of counsel's time sheets, line by line, a process with which this Court is intimately familiar, finds that the time spent litigating this case was not only reasonable, but efficient. The Court further finds that WRS's counsel did not submit charges for unnecessary, redundant or excessive hours.

Based upon the foregoing, WRS also is entitled to a judgment in its favor in the amount of $92,768.00 for attorney's fees.

Date: February **20**, 2007

Arthur J. Schwab
United States District Judge

_____

representation of WRS in this case. Counsel further represented that he never served as WRS's business lawyer.

24